## Dovberg v. Board of License & Inspection Review

*Narin, Garfinkel & Mann,* for appellant.

*Robert A. Latrone,* for appellee.

GOLD, P. J., March 31, 1964.—This is an appeal from the October 21, 1963, action of the Board of License and Inspection Review affirming denial by the Department of Licenses and Inspections of the City of Philadelphia of a gun permit to appellant.

Since September 1962, appellant, Morris Dovberg, has been an employe of the Stanley Warner theatre chain. Since November 1962, he has been theater manager of the Wishart Theater at Front and Allegheny Streets in Philadelphia.

From October 1960, until December 1962, he was employed by Radio Corporation of America at Camden, New Jersey. It appears that during some part of the time from September to December 1962, he had two employers, Radio Corporation of America and the Stanley Warner theatre chain.

From September 1957 until October 1960, Dovberg was employed as theater manager of the Band Box Theater located at 30 East Armat Street, Philadelphia. Part of his duties at the Band Box and Wishart theaters included the handling of daily receipts and their deposit at night at nearby banks.

During the time of his employment at the Band Box Theater, he was held up and robbed of the theater's receipts. In the robbery, he was gun-whipped. His injuries required hospitalization.

Thereafter, he applied to the Department of Licenses and Inspections for a gun permit, and on December 6, 1960, a gun permit, good for one year, was issued to him. On November 15, 1961, Dovberg applied for a renewal of the gun permit. On the recommendation of the Police Department Firearms Licensing Board, the

Department of Licenses and Inspections refused to renew the permit. At the time renewal was refused, it appears that the Police Department Board based such refusal on the basis of his R.C.A. employment and the fact that he was no longer employed at the Band Box Theater. In September 1962, Dovberg again submitted a renewal application which was refused by the department. The Department's refusal was affirmed by the board on October 21, 1963. This appeal is from the board's action in affirming the refusal to grant the gun permit.

Although the renewal application of September, 1962, was technically improper since Dovberg then had no existing permit which could be renewed, the department treated such application as if it were an original application for a gun permit. Similarly, although counsel for appellant filed his appeal in the wrong forum, the parties by stipulation agreed to the transfer of the appeal to this court.

It is clear from the testimony adduced at the September, 1963, hearing before the Board of License and Inspection Review that the Police Department Firearms Licensing Board made no investigation of the September, 1962, application before disapproving it.

Lieutenant Richard Miller, witness for the Department of Licenses and Inspections, testified, in pertinent part, as follows:

Q: "Did you make any field investigation of any sort?"

A: "No, Sir." (N.T. 7)

\*        \*        \*

Q: "I take it, to sum up your testimony, you made no real investigation of this application. You simply looked at it and refused?"

A: "Yes, Sir, predicated on the investigation we conducted in 1961." (N.T. 8)

\*        \*        \*

Q: "The only fact I want to establish for the record, as of September 10, 1962 you made no investigation of this man's application?"

A: "I did personally, yes. I referred to his 1961 application which I have in his folder in which he was disapproved."

Q: "Then it would be correct to state the only investigation you made was to refer to the 1961 application in September, 1962?"

A: "Correct. He was disapproved in 1961 and the same reasons for 1961 apply for 1962. There was no need for a field investigation under present policy." (N.T. 10)

Counsel for applicant contends that failure of the Department of Licenses and Inspections to conduct an investigation of the application invalidates the department's disapproval of the application and the board's affirmation of such action. Counsel for the department contends there is no absolute requirement that an application be investigated, that this is a matter for administrative discretion. Counsel for the parties are in agreement with each other that there is a dearth of court opinions interpreting the Uniform Firearms Act of June 24, 1939, P. L. 872, sec. 628, 18 PS §4628, as amended, et seq., the applicable statute under which the September, 1962, application was made. And both counsel rely on the case of Levering v. Dettre, Sheriff, 41 D. & C. 716 (1941). In Levering, Judge Dannehower stated this general proposition at page 718:

"No fixed or certain rule or regulation for issuing such a license can be laid down, because *the fitness of every applicant and the reasons advanced are varied and different, so that necessarily every application must be decided upon its own individual facts;* and where discretion is vested in an official there usually is a difference of opinion." (Italics supplied.)

No gun permit application should be granted or denied summarily. Each application should be carefully considered and granted or denied "upon its own individual facts." If the necessary facts can be ascertained only by investigation, the necessary investigation should be conducted.

This particular application merits investigation. In 1960, applicant was employed as a theater manager and was required, in carrying out his duties, to make night deposits. A gun permit was granted to him following a holdup in which he was severely beaten. Today he is in the same employment capacity, theater manager, but at a different location. Among his duties now, as at the time of the holdup and beating, is the requirement that he make night deposits. Counsel for the department stresses that, since 1960, applicant has not been the subject of any further violence, that working in a new neighborhood there is less likelihood applicant might become a repeat victim of his previous assailants, that the amount of receipts usually carried for deposit does not exceed the amount usually carried by the average professional or business man, and that if applicant is to be granted a gun permit, the door will be opened to grant permits to every "P.T.C. busdriver, yellow cab driver, Jack and Jill driver-salesman, finance collection man, super market manager, manager of the Five and Ten Cents Store, milkman, breadman and every other theater manager."

Fortunately, applicant has not been made a repeat victim of a holdup or beating, but it does not follow that because he is now working in a different section of the City and does not usually carry large amounts of cash on his person that the possibility of such a recurrence is more remote. In certain areas of our city substantial sums of money can be carried by anyone with a reasonable degree of safety; in other areas even small amounts of money, if carried by a person generally

known to carry sums of money for deposit, can be a real invitation to violence. The amount of money being carried, while not controlling, is a factor to be considered. Similarly, the area in which applicant must carry the funds is a factor for consideration: the higher the incidence of violence in the area concerned, the more reason there is to expect violence to be perpetrated on a person whose regular duties require him to be in such area late at night, unattended, with varying amounts of money on his person. There are also other factors for consideration. The statute emphasizes the "reason to fear an injury to his person or property," but also provides that the application for permission to carry a firearm can be supported by "any other proper reason."

The answer to the expressed concern of counsel for the department that the grant of a gun permit to this applicant will open the door to a deluge of applications from bus drivers, taxi-cab drivers and others is that ". . . the fitness of every applicant and the reasons advanced are varied and different, so that necessarily every application must be decided upon its own individual facts . . ."

The many factors which must be considered to dispose of Mr. Dovberg's application can be ascertained and evaluated only by an investigation of applicant and his application.

Accordingly, for the foregoing reasons, we enter the following

### Order

The October 21, 1963, action of the Board of License and Inspection Review in refusing applicant, Morris Dovberg, a license to carry a firearm is hereby reversed, and the Department of Licenses and Inspections is hereby ordered to conduct an appropriate investigation of applicant and his application, and to reconsider application on the basis of the information developed by such investigation.